IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 DEC 12  AM 11: 34

THOMAS M. GOULD
CLERK, US. DISTRICT COURT
W/D OF TN, MEMPHIS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                              No. 05-20329 B

MICHAEL HOOKS, SR.,

      Defendant.

---

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS INDICTMENT

---

In a two-count indictment entered August 30, 2005, the Defendant, Michael Hooks, Sr., was charged with attempt to obstruct, delay and affect commerce by means of extortion and demand and acceptance of money in exchange for influence in connection with the business transactions of Shelby County, Tennessee, in violation of 18 U.S.C. §§ 1951 and 666, respectively. Before the Court are motions of the Defendant to dismiss the indictment (1) on the grounds of duplicity; (2) for lack of jurisdiction and for failure to state a claim; and (3) for unconstitutional general instructions to the grand jury, or alternatively, to require that the Government produce a copy of the instructions. The Government has responded to the Defendant's motions, which are now ripe for review.

Hooks is an elected county commissioner for the third district of Shelby County, Tennessee. The charges against the Defendant arise from Operation Tennessee Waltz, a multi-year investigation initiated in response to allegations of corruption by elected officials in Tennessee. The investigation was directed by the United States Attorney's Office in Memphis, Tennessee and carried out by agents of the Federal Bureau of Investigation ("FBI"). As part of the sting operation, agents created a



fictitious company called E-Cycle Management, Inc. ("E-Cycle"), which was purportedly headquartered in Atlanta, Georgia with offices in both Nashville and Memphis, Tennessee. The sham company claimed to be engaged in the business of obtaining and disposing of obsolete electronic equipment by salvaging it at a location outside the United States. The Defendant allegedly used his official position to extort money from persons, believed by Hooks to be associates of E-Cycle, who indicated that the company was interested in doing business with the Shelby County government. During meetings in August and September 2004, the indictment claims that Hooks responded to E-Cycle's interest in entering into a contract with Shelby County by informing the agents that he had a $38,000 campaign deficit and inquiring as to the company's interest in making a contribution. According to the indictment, Hooks interacted with agents acting as associates of E-Cycle on eight additional occasions during the period from September 2004 through March 2005. During five of those meetings, Hooks allegedly accepted a total of $24,200 from the associates in exchange for his assistance in securing a contract with Shelby County. On the basis of these acts, Count I of the indictment charges Hooks with attempted extortion while Court II charges him with bribery.

I. Duplicity

Hooks first submits that each count of the indictment should be dismissed as duplicitous. An indictment is duplicitous if it charges two or more separate crimes in a single count. United States v. Washington, 127 F.3d 510, 512-13 (6th Cir. 1997). The prohibition on duplicitous indictments protects defendants against "the possibility that the defendant may not be properly notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings during the trial, and that he may be convicted by less than [a]

2

unanimous verdict." United States v. Alsobrook, 620 F.2d 139, 142 (6th Cir. 1980). There are circumstances in which a single count can allege multiple offenses without being subject to dismissal for duplicity. "[A]cts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." United States v. Tutino, 883 F.2d. 1125, 1141 (2nd Cir. 1989); see also United States v. Robinson, 651 F.2d 1188, 1195 (6th Cir. 1981) (finding no duplicity where indictment particularized multiple acts in one count that were part of single scheme). Further, "[i]t is not duplicitous to allege in one count that multiple means have been used to commit a single offense." United States v. Damrah, 124 Fed. Appx. 976, 981 (6th Cir. 2005).

The first paragraph of Count one of the indictment charges that Hooks

> knowingly and intentionally attempt[ed] to obstruct, delay, and affect commerce, by means of extortion . . ., in that [Hooks], in connection with a contract sought to be entered into between E-Cycle and the Shelby County government did obtain, by extortion, cash payments from and with the consent of representatives of E-Cycle, which payments were induced by [Hooks] under color of his official right as a Shelby County Commissioner and which payments were not legally due [to Hooks] or his office.

(Indictment Count I, ¶ 5.) Paragraph six of the same count alleges that Hooks took at least one of ten listed overt acts constituting a substantial step, "in furtherance of this attempt, and to accomplish the objects thereof." (Indictment Count I, ¶ 6(A)-(J).) Hooks argues that because the offense charged in Count I is completed at the time the public official receives a payment in exchange for an agreement to perform an official act and because the acts in the indictment include five discreet instances of the FBI giving money to Hooks, the Count impermissibly charges five separate offenses.

The Defendant also alleges the same defect in the second count of the indictment, which charges that Hooks "knowingly and corruptly demand[ed] for the benefit of any person and

3

accept[ed] and agree[d] to accept . . . $24,2000 in cash intending to be influenced and rewarded, in connection with business transactions of Shelby County, Tennessee involving a value of $5,000 or more . . ." (Indictment Count II, ¶ 2.)  According to Hooks, every corrupt solicitation or acceptance of money constituted completion of the offense.  Because the indictment alleges five separate solicitations or acceptances of money in excess of $5,000, the Defendant contends Count II is also duplicitous.

The Court finds these arguments to be without merit.  In United States v. Alsobrook, the Sixth Circuit considered whether the inclusion of six acts of interstate travel in a single count charging a violation of the federal Travel Act rendered an indictment duplicitous. United States v. Alsobrook, 620 F.2d at 142.  Because each act of interstate travel with the intent to aid unlawful gambling activity constituted a punishable offense under the Travel Act, Alsobrook argued that the indictment impermissibly charged six separate crimes in a single count.  In rejecting this argument, the court noted that the "determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecution." Id.  Because the government's characterization of the acts as a single, continuous scheme was fair and because none of the dangers of duplicity were present in the case, the court concluded that the indictment was not duplicitous. Id. at 142-43.

A reading of the indictment in the instant case clearly shows that the charges in each count are integral parts of a single, continuous scheme.  In Count I, Hooks is charged with attempted extortion for accepting payments from FBI agents acting as representative of E-Cycle in exchange for his assistance in securing a contract with the Shelby County government for the disposal of obsolete electronic equipment.  Each of the five listed instances of receipt of money, alleged by

4

Hooks to be duplicitous, are in fact merely steps taken to effectuate this single offense.  Similarly, in Count II,  Hooks' alleged solicitation or receipt of payments in excess of $5,000 during the period of September 7, 2004 through March 10, 2005 on five occasions are part and parcel of his total alleged acceptance of $24,200 in exchange for influence in the contract process.  Because these acts take place over a period of seven months does not change the Court's conclusion.  See e.g. United States v. Albunio, No. CR910403(S-2), 1992 WL 281037, at * 4 (E.D.N.Y. Sept. 9, 1992) (holding that a single count charging multiple acts of extortion over a three year period was not duplicitous because it charged a single, continuous scheme of extortion).

Further, the Court finds that the indictment does not contain the risks of duplicity.  The indictment adequately notifies Hooks of the charges against which he must defend and sets forth a distinct period within which he allegedly committed them.  Second, there is no indication, nor has Hooks argued, that he may be subject to any prejudicial evidentiary rulings as a result of the construction of the indictment.  Third, the risk of double jeopardy is adequately eliminated by the specificity of the conduct that is the subject of the charge.  Finally, any danger that might exist can be remedied by a curative jury instruction.  Alsobrook, 620 F.2d at 143; see also United States v. Adesida, 129 F.3d 846, 849 (6th Cir. 1997) (holding that "the court can cure the error of duplicity by instructing the jury that it must come to a unanimous verdict in regard to either one offense or the other.").  Because the Court finds that the characteristics necessitating the dismissal of an indictment for duplicity are not present here, the Defendant's motion to dismiss on this basis is DENIED.

II. Lack of Jurisdiction

Hooks next argues that this Court lacks subject matter jurisdiction over Count 1 of the indictment because 18 U.S.C. § 1951 (the "Hobbs Act") exceeds Congress' regulatory power under

the Commerce Clause as applied to the charge against him. The Hobbs Act prohibits extortion or attempted extortion where such crime "in any way or degree, obstructs, delays or affects commerce." 18 U.S.C. § 1951(a). Consistent with the recognition that the United States lacks authority under the Commerce Clause to illegalize crimes that are purely intrastate, the "commerce" affected must be interstate commerce or commerce with or within the District of Columbia or a United States territory or possession. Id. at § 1951(b)(3); United States v. Carmichael, 232 F.3d 510, 516 (6th Cir. 2000), cert. denied, 532 U.S. 974, 121 S.Ct. 1607, 149 L.Ed.2d 472 (2001). The Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion . . ." Stirone v. United States, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). "This broad jurisdictional language has historically been construed as requiring only a *de minimis* effect on interstate commerce." United States v. Dupree, 323 F.3d 480, 484 (6th Cir. 2003). The Sixth Circuit's application of the *de minimis* standard to Hobbs Act violations is based on the aggregation principle.[1] United States v. Min Nan Wang, 222 F.3d 234, 239 (6th Cir. 1999). Specifically, the court has reasoned that because the statute "regulates an activity which, through repetition, in aggregate has a substantial effect on interstate commerce, the *de minimis* character of individual instances arising under the statute is of no consequence." United States v. Smith, 182 F.3d 452, 456 (6th Cir. 1999) (quoting United States v. Bolton, 68 F.3d 396, 398-99 (10th Cir.1995)).

Hooks contests that the *de minimis* standard can constitutionally be applied here. Rather,

---

[1] "Under the aggregation theory, economic activity that may not itself substantially affect interstate commerce may be regulated under the Commerce Clause if that conduct, in the aggregate, would have such a substantial effect." United States v. Gray, 260 F.3d 1267, 1273 n.2 (11th Cir. 2001) (citing Wickard v. Filburn, 317 U.S. 111, 127-28, 63 S.Ct. 82, 90-91, 87 L.Ed. 122 (1942)).

relying on the recent Supreme Court decisions in Gonzales v. Raich, 545 U.S. ___, 125 S. Ct. 2195, 2211 (2005), United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624, 131 L.Ed.2d 626 (1995), he avers that the government must demonstrate that the activity alleged, in isolation, had a substantial effect on interstate commerce. In Gonzales v. Raich, the Supreme Court reviewed its Commerce Clause jurisprudence, including Lopez and Morrison, and reiterated that "Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce" is firmly established. Gonzales, 125 S.Ct. at 2206. "When Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class." Id. Hooks does not dispute that a local economic activity with only a *de minimis* impact on interstate commerce is within Congress' regulatory reach if the aggregate effect of such activity substantially affects commerce. (Def.'s Reply at 2.); see also Gonzales, 125 S.Ct. at 2209 (quoting United States v. Perez, 402 U.S. 146, 154 (1971) ("Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class.")). Hooks maintains, however, that because the local extortion alleged in the indictment is not the "production, distribution, [or] consumption of commodities," it is not a class of "economic" activity. See Gonzales, 125 S.Ct. at 2211(citing Webster's Third New International Dictionary 720 (1966)). Nor, according to Hooks, is the conduct an essential part of a broader federal regulatory scheme covering a particular economic activity. Thus, according to Defendant, aggregation of the economic effect is constitutionally precluded as a basis for establishing the jurisdictional nexus. Rather, the government must demonstrate that Hooks' actions, on their own, had a substantial impact on interstate commerce. (Def.'s Mot. at 5.)

The Court finds Defendant's argument to be unpersuasive. "Extortion" is the "obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The Hobbs Act proscribes extortionate acts involving an official's "taking of money by a public official in exchange for *specific* promises to do or refrain from doing *specific* things. In other words there must be a quid pro quo." United States v. Bibby, 752 F.2d 1116, 1127 n.1 (6th Cir. 1985) (citations omitted). The Sixth Circuit has referred to extortion as a "quintessential illegal economic activit[y]." Waucaush v. United States, 380 F.3d 251, 256 (6th Cir. 2004) (quoting with approval United States v. Shryock, 342 F.3d 948, 984 n. 6 (9th Cir.2003)). The court's view is in accord with several of its sister circuits that have explicitly noted the economic character of extortion and the intent of Congress to regulate economic activities through the Hobbs Act. See United States v. Gray, 260 F.3d 1267, 1274 (11th Cir.2001) ("the Hobbs Act plainly and undeniably regulates economic activity."); United States v. Malone, 222 F.3d 1286, 1295 (10th Cir.2000) ( "the Hobbs Act regulates economic activity"); United States v. Bagaric, 706 F.2d 42, 58 (2d Cir.) (referring to extortion as "classic economic crime"), cert. denied, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983).

Further, while the Sixth Circuit has not explicitly stated that aggregation is permissible because of the economic character of extortion when applying the *de minimis* test to Hobbs Act violations, it has consistently held that the test survived the limitations on Congress' Commerce Clause authority identified by the Supreme Court in Lopez and Morrison. See United States v. Collins, 129 Fed. Appx. 213, 219 (6th Cir. 2005) ("Neither [Lopez nor Morrison], however, involved the Hobbs Act and, thus, did not overrule the application of the *de minimis* rule."); United States v. Zirelli, 128 Fed. Appx. 473, 477(6th Cir. 2005) (applying the *de minimis* standard to uphold a

conviction for extortion under the Hobbs Act); <u>United States v. Hopson</u>, 134 Fed. Appx. 781, 794

(6th Cir. 2004) ("this court has held that the *de minimis* rule in Hobbs Act cases survives <u>Lopez</u> and

<u>Morrison</u>."); <u>Smith</u>, 182 F.3d at 456 ("the *de minimis* standard for interstate commerce effects of

individual Hobbs Act violations survived <u>Lopez</u>.").   Thus, to the extent that the Sixth Circuit has

continued to apply the *de minimis* test to extortion charges under the Hobbs Act after <u>Lopez</u> and

<u>Morrison</u>, this Circuit's precedent would seem to indicate that extortion is an economic activity

capable of aggregation.

Defendant's argument that <u>Gonzalez</u> somehow narrowed the definition of economic activity

used in <u>Morrison</u> is without merit.[2]  <u>See</u> <u>Gonzales</u>, 125 S.Ct. at 2236 (Thomas, dissenting)("the

majority defines economic activity in the broadest possible terms"); <u>see also</u> <u>Id.</u> at 2224 (O'Connor,

dissenting) ("The court's definition of economic is breathtaking.. . [It] threatens to sweep all of

productive human activity into federal regulatory reach."). Further, the Court opines that, though

<u>Gonzales</u> has yet to be interpreted by this Circuit, extortion, or the taking of things of value in

exchange for promises, is within the expansive definition offered by the Supreme Court. <u>See</u> <u>Bibby</u>,

752 F.2d at 1127 n.1. Whereas here, extortionate transactions  involve the exchange of money from

a business engaged in interstate commerce to secure favorable business treatment or transactions, the

Court cannot conclude the activity is not economic in character.  Further, such "distribution" or

"consumption" of business property, in  the aggregate,  can clearly have a substantial effect on

---

[2] Indeed, whereas <u>Morrison</u> found the regulated activity non-economic, <u>Gonzalez</u> found that the regulated activity <u>was</u> economic.  <u>Compare</u> <u>Morrison</u>, 529 U.S. at 610-11(finding that the civil remedy provision of the Violence Against Women Act of 1994 could not be sustained under the Commerce Clause because it regulated non-economic criminal activity.) <u>with</u> <u>Gonzales</u>, 125 S.Ct. at 2211 (upholding the Controlled Substances Act ("CSA") as applied to the intrastate, noncommercial cultivation and possession of cannabis for personal medical purposes noting that the CSA, unlike the statute at issue in <u>Morrison</u>, regulated "quintessentially economic" activity).

commerce. Application of a *de minimis* test under such circumstances, contrary to the Defendant's argument, is not only in accord with the established precedent of this Circuit, but is also consistent with Lopez, Morrison, and Gonzales.

### III. Failure to State an Offense

Hooks advances several arguments in support of his motion to dismiss the indictment for failure to state an offense. The Court will address each in turn.

### A. Fabrication of Jurisdictional Element

Hooks first maintains that the indictment fails to state the offense charged because the jurisdictional element of the Hobbs Act violation is impermissibly based entirely on facts fabricated by the FBI in carrying out a sting operation. Because E-Cycle is not actually a business engaged in interstate commerce, nor did it, even as a sham corporation, actually engage in any interstate activities, argues the Defendant, the only jurisdictional nexus is the fiction, created by the FBI, that the company was a business engaged in interstate commerce. Hooks maintains that jurisdiction cannot lie on this nexus alone. In support of his position, the Defendant cites United States v. Archer, 486 F.2d 670 (2nd Cir. 1973).

In Archer, federal agents arranged a sham arrest and arraignment of an undercover officer in furtherance of an investigation into corruption in the New York criminal justice system. Archer, 486 F.2d at 672. After the agent's arrest, Archer, a local district attorney, conspired with other defendants to accept a bribe offered by the agent to avoid trial or conviction. Id. at 673-74. Following completion of the sham, the defendants were charged with violation of the federal Travel Act for using telephone facilities in interstate and foreign commerce to commit bribery and conspiracy to commit bribery. The government relied on three telephone calls in an effort to establish the "use of

10

a facility in interstate commerce" element required under the Travel Act. The agent once placed a telephone call to Klein, a defendant conspiring with Archer, from abroad. Id. On one other occasion, the agent left a message with an out-of-state number and Klein returned the call. Id. Finally, there was evidence that Wasserberger, another co-conspirator, attempted to contact the agent by placing an out-of-state call. The court first rejected the calls placed by Wasserberger as a basis for the jurisdictional element because the purpose of the call could not be said to have been to promote illegal activity. Id. at 682. Regarding the remaining calls, the Second Circuit held that they were insufficient to satisfy the interstate element required for conviction under the Travel Act, because the calls were "manufactured by the Government for the precise purpose of transforming a local bribery offense into a federal crime." Id. at 681-82. Because the evidence demonstrated no nexus to interstate facilities beyond the manufactured events, the court reversed the defendants' convictions. As explained on petition for rehearing, the court's decision was influenced by the fact that "there [was] no indication that the defendants agreed either to make or to cause to be made any interstate or foreign telephone calls." Id. at 684-85. Further, influencing the court's conclusion was what it perceived to be the "arrogant disregard for the sanctity of the state judicial and police processes" demonstrated by the investigators use of the police, courts and grand jury to effectuate its sham. Id. at 677.

Courts have been reluctant to adopt the Second Circuit's reasoning in Archer. Rather, when construing Archer, courts, including the Sixth Circuit, have "have taken pains to limit its applicability and to explain that 'manufactured jurisdiction' as an independent doctrine is a dubious concept." United States v. Burdette, 86 Fed.Appx. 121, 127 (6th Cir. 2004) (quoting United States v. Wallace, 85 F.3d 1063, 1065 (2d Cir.1996)); see also United States v. Skoczen, 405 F.3d 537, 543(7th Cir. 2005) ("No case has ever turned on the principle set forth in Archer."); United States v. Crutchfield,

11

379 F.Supp.2d 913, 921(W.D.Tenn. 2005) ("Sixth Circuit courts considering an <u>Archer</u> challenge have found it inapplicable."); <u>United States v. Shields</u>, 793 F.Supp. 768, 780 (N.D.Ill.1991) ("<u>Archer</u>'s subsequent case history has been one characterized by the universal effort of other courts to distinguish, rather than follow, the opinion."). Beyond its questionable precedential value, the Court finds that <u>Archer</u> is distinguishable from the facts of the instant case. The defendants in <u>Archer</u> were charged with violation of the Travel Act for a purely local crime which had no connection to interstate commerce. Rather, unlike the instant case, the crimes in <u>Archer</u> were "made interstate only by actions of the government that *could not have been foreseen or intended by the defendants*." <u>Skoczen</u>, 405 F.3d at 543 (emphasis added). Here, Hooks is charged with extortion of a business engaged in interstate commerce. Unlike the <u>Archer</u> defendants, when he solicited money from E-Cycle representatives, Hooks believed that the company was engaged in interstate business and thus could have foreseen the interstate implications of his actions.

The Court finds that the facts of the instant matter are more similar to <u>United States v. Brooklier</u>, 459 F.Supp. 476 (C.D. Cal. 1978), where the United States District Court for the Central District of California considered the reach of Congress' authority under § 1951 in relation to jurisdiction predicated on a sham interstate business. The <u>Brooklier</u> defendants were charged with inchoate violation of the Hobbs Act for attempted extortion of Forex Co., a business they believed to be engaged in the international sale of pornographic films. <u>Id.</u> at 477-78. In fact, Forex Co. was a sham corporation established by F.B.I. agents. <u>Id.</u> Because the company was a fiction and the sham did not involve any interstate transactions, the government conceded that the $6,500 extorted by the defendants had no *actual* effect on interstate commerce. <u>Id.</u> at 478. Despite the fact that the activity did not have any effect on commerce, the court concluded that Congress did have authority to

12

proscribe the activities alleged in the indictment. Id. at 482. In reaching its conclusion, the court noted that conviction for an inchoate offense requires a showing of only a potential effect on interstate commerce and reasoned that

> [a] potential effect on interstate commerce, is not an actual or real effect on interstate commerce. In this case, the alleged attempted Hobbs Act violation that caused no actual effect on interstate commerce is indistinguishable from other attempts in which the effect on interstate commerce was also not actual, but merely potential.

Id. at 482-83. The fact that the extortion would have actually affected commerce but for a fact unbeknown to defendants, i.e., that Forex was a company not actually engaged in commerce, was immaterial.

In United States v. Jannotti, 673 F.2d 578 (3rd Cir. 1978), the majority of the Third Circuit, sitting en banc, also upheld jurisdiction predicated on fictitious interstate commerce activity. There, undercover agents purporting to represent an Arab shiek made substantial payments to Philadelphia city council members in exchange for assurances of favorable local regulation. Jannotti, 673 F.2d at 581-89. Despite the fact that the only nexus to interstate commerce was based on the sham business opportunity with the Arab shiek, the court upheld jurisdiction over the inchoate conspiracy offense concluding that "the defendants agreed to do acts which, had they been attainable, would have affected commerce. At that point, regardless of whether an actual effect on commerce was 'reasonably probable,' a sufficient federal interest was implicated to support federal jurisdiction over the agreement." Jannotti, 673 F.2d at 592.

In United States v. DiCarlantonio, 870 F.2d 1058 (6th Cir. 1989), the Sixth Circuit applied the reasoning of Brooklier and Jannotti to substantive and inchoate Hobbs Act charges against a city attorney and a local fire chief. In that case, the defendants solicited a bribe from a local attorney and

his client, a gas business engaged in interstate commerce, for their efforts to change a local ordinance relating to propane tanks which had a negative impact on the client's business. DiCarlantonio, 870 F.2d at 1059. After the solicitation, the attorney and client began cooperating with the FBI and used FBI funds to pay the bribe to the defendants. Id. On appeal of their conviction, the court accepted defendant's argument that, because the funds used to pay the bribe originated from the FBI rather than the interstate business and because no impact on the flow of gas resulted from the their acts, the activity alleged had no actual effect on interstate commerce. Id. at 1060. On this basis, the court reversed the substantive Hobbs Act convictions. Id. at 1061. However, because actual impact is not required to establish an inchoate offense, the court upheld the convictions for attempted conspiracy. Relying on Brooklier and Jannotti, the Sixth Circuit noted that "factual impossibility is no defense to an inchoate offense under the Hobbs Act." Id. at 1061 (internal quotations omitted). Because the defendants' conspiracy scheme "would have affected commerce by depleting the assets of an enterprise in interstate commerce" had it been successful, the court affirmed the attempted conspiracy convictions. Id. at 1061-62.

Post-DiCarlantonio, the Sixth Circuit continued to decline to accept factual impossibility, or "the situation in which the defendant is unable to accomplish what he intends because of some facts unknown to him," as a defense to inchoate Hobbs Acts offenses in United States v. Peete, 919 F.2d 1168, 1176 (6th Cir. 1990). Again relying on Brooklier, the court concluded that "factual impossibility is no defense to a charge of attempt to violate the Hobbs Act." Id. at 1175.

Applying the law to the facts of the instant case, the Court finds that the indictment adequately states the jurisdictional element of the offense charged. The indictment alleges that Hooks solicited and received funds from a business he believed to be engaged in interstate commerce. This receipt

of funds constituted a deprivation of property sufficient to meet the *de minimis* effect requirement of the Hobbs Act. The fact that the extortion would have affected commerce but for the factual impossibility is immaterial. Finally, the Court notes the Defendant's claim that, even if jurisdiction is not lacking, the fact that the FBI provided money to Hooks is insufficient as a matter of law to create federal jurisdiction. While this fact is true for substantive violations, the "receipt of FBI funds [is] sufficient to establish Hobbs Act jurisdiction for purposes of an attempt charge." DiCarlantonio, 870 F.2d at 1060 (quoting United States v. Rindone, 631 F.2d 491, 494 (7th Cir. 1980)). As such, Defendants motion to dismiss Count 1 of the indictment for failure to state the jurisdictional element of the offense is DENIED.

### B. Application of 18 U.S.C. § 1951 to the Conduct of Local Officials

Hooks next maintains that the indictment should be dismissed because the application of the Hobbs Act to the activity of a local official is contrary to the intent of Congress. In support of his position, Hooks relies on the Supreme Court's decision in McCormick v. United States, 500 U.S. 257, 111 S.Ct. 1807 (1991), to assert that the Hobbs Act does not reach local campaign fundraising activities such as those alleged in the indictment. In McCormick, the Supreme Court reversed a conviction for extortion by state legislators holding that property is extorted in violation of the Hobbs Act only when there is a *quid pro quo*, i.e. that "an official asserts that his official conduct will be controlled by the terms of the promise or undertaking." McCormick, 500 U.S. at 273. Because the jury instruction permitted conviction even upon a finding that the payments at issue in McCormick were campaign contributions without any such requirement, the Court held that the conviction could not be sustained. Id. at 274. Like Hooks, the defendant in McCormick argued that the Hobbs Act was inapplicable to conduct of local officials. Although the Court declined to address the issue

15

because it was not presented in the petition for certiorari, it noted that "in view of the language of the Hobbs Act and the many cases approving the conviction of local officials under the Act" it was not in plain error for the lower courts to fail to recognize the issue. Id. at 269.

Hooks interprets the court's response and reversal of the state official's conviction under the Hobbs Act to provide support for the position that the Act was not intended to apply to the conduct of local officials. The Court disagrees. Far from an endorsement of Hooks' position, the cited language highlights prior interpretation of the Act as broadly encompassing all extortion affecting interstate commerce, including those acts by local officials. As noted by the Supreme Court, the words of the Act "manifest[] a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion . . ." United States v. Culbert, 435 U.S. 371, 373, 98 S.Ct. 1112 (1978) (quoting Stirone, 361 U.S. at 215). Rather than drawing a line at the conduct of local officials, the words "do not lend themselves to restrictive interpretation," but reach all extortion which "in any way or degree, obstructs, delays or affects commerce." Id.; 18 U.S.C. § 1951(a); see also City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 378-79 (1991) (referring to the Hobbs Act as a Congressional act "aimed at combating corruption in state and local governments."). Further, the Court notes the long history of application of the Hobbs Act to the conduct of local officials. See e.g., Evans v. United States, 504 U.S. 255, 257, 112 S.Ct. 1881, 1883 (1992) (affirming Hobbs Act conviction of an elected member of the Board of Commissioners of DeKalb County, Georgia); Peete, 919 F.2d at 1172-76 (affirming Hobbs Act conviction of an elected local city councilman); United States v. Hall, 536 F.2d 313 (10th Cir. 1976) (upholding state governor's Hobbs Act conviction); United States v. Kenny, 462 F.2d 1205, 1211 (3rd Cir. 1972) (upholding Hobbs Act convictions of public officials and political leaders in Jersey City and Hudson

County, New Jersey).  Because Congressional intent underlying the Hobbs Act is to reach all extortion, including that by local officials, which affects commerce, Defendant's motion to dismiss Count I of the indictment on this basis is DENIED.

<u>C. Failure to Allege "Benefits" Element of Count Two</u>

Count II of the indictment charges that Hooks "knowingly and corruptly demand[ed] for the benefit of any person and accept[ed] and agree[d] to accept . . . $24,2000 in cash intending to be influenced and rewarded, in connection with business transactions of Shelby County, Tennessee involving a value of $5,000 or more . . ." in violation of 18 U.S.C. § 666(b).  (Indictment Count II. ¶ 2.) Hooks maintains that the Count must be dismissed because it fails to allege all essential elements of the offense charged.  Federal Rule of Criminal Procedure 7(c) governs the nature and contents of an indictment and requires that "[t]he indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged ... must give the official or customary citation of the statute, rule, regulation or other provision of law that the defendant is alleged to have violated." FED.R.CRIM.P. 7(c).  "An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against him and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>United States v. Seelig</u>, 622 F.2d 207, 211 (6th Cir. 1980).

18 U.S.C. § 666(a) imposes federal criminal penalties on "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof" who "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or

17

more." 18 U.S.C. § 666(a)(1), (B).  For criminal liability to lie, the statute requires that "the organization, government, or agency receive[], in any one year period, *benefits* in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of *Federal assistance*."  Id. at § 666(b) (emphasis added).

Because the indictment alleges that Shelby County is a local government which receives "financial assistance in excess of $10,000" during the period in question, Hooks asserts that the indictment does not allege "benefits" in excess of $10,000 under a federal program as required by 18 U.S.C. § 666(b).  (Indictment Count II, ¶ 2; Def.'s Mot. at 10.)  Specifically, the Defendant argues that the term "benefits" is a term of art which must be used to satisfy the statutory requirement.  In response, the government argues that the indictment's allegation of Shelby County's receipt of federal assistance in excess of $10,000 is sufficient to establish the "benefits" element of the offense.

The Court finds that Defendant's argument is in conflict with the express language of § 666(b).  As noted by the government, the statutory language uses the term "financial assistance" to describe a particular type or class of "benefits . . . under a federal program" which satisfy the statutory requirement.  Further, the Court notes the legislative history of the statute expressing Congressional intent that the term be interpreted broadly.  See S. REP. NO. 225, 98th CONG., 2D SESS. 369 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3511("The Committee intends that the term 'Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance' be construed broadly.").  On this basis, the Court finds that the allegation in the indictment is sufficient to satisfy the requirements of Federal Rule of Criminal Procedure 7(c).  See United States v. Dransfield, 913 F.Supp. 702, 706 (E.D.N.Y. 1996) (finding an indictment charging a violation of 18 U.S.C. § 666 by a government agency receiving "federal assistance" in excess of $10,000 per year

18

sufficient despite its failure to use the words "benefits under a Federal Program" ). Accordingly, Defendant's motion to dismiss Count II for failure to state an offense on this basis is DENIED.

### IV. Tenth Amendment Violation

Hooks also maintains that the Hobbs Act violates the Tenth Amendment as applied to Count I of the indictment, which alleges conduct of a local elected official in the context of campaign fundraising. The Court must disagree. The Tenth Amendment to the United States Constitution reserves power not constitutionally delegated to the federal government to the States. U.S. CONST. amend. 10. As noted above, the application of the Hobbs Act to the facts alleged in the indictment is a valid exercise of Congress' authority under the Commerce Clause to regulate interstate commerce. Relying on McNally v. United States, 483 U.S. 350, 107 S.Ct. 2785 (1987), Hooks maintains, however, that because the indictment alleges activity by a local elected official, Tenth Amendment principles of state sovereignty limit the application of the Hobbs Act.

The Court finds that McNally has no application to the facts here. In that case, the Supreme Court refused to construe the federal Mail Fraud Act as setting standards of behavior for state and local officials where the statutory language of the Act was insufficiently clear to merit such broad interpretation. McNally, 483 U.S. at 360. Rather than commenting on Congress' constitutional power to regulate such matters, the Court based its decision on statutory interpretation, noting that "[i]f Congress desires to go further, it must speak more clearly than it has." Id.; see also United States v. Frost, 125 F.3d 346, 364 (6th Cir. 1997) (noting that the holding in McNally was the result of the Court "merely . . . applying principles of statutory interpretation"). In contrast to the statute at issue in McNally, there is no ambiguity in the Hobbs Act or Congressional intent underlying its enactment. See Peete, 919 F.2d at 1173 (" The clear language of the Hobbs Act . . . prohibits attempts to affect

commerce by extortion."). Further, the Court finds that Defendants reliance on New York v. United States, 505 U.S. 144, 112 S.Ct. 2408 (1992), is likewise misplaced. There is no implication in the instant case that the federal government has compelled the State of Tennessee, or any other state for that matter, to enforce the regulatory scheme contemplated by the Hobbs Act in violation of the principles of federalism discussed by the Supreme Court in New York.

As noted by the Supreme Court,

> the statutory language [of the Hobbs Act] sweeps within it all persons who have in any way or degree . . . affect[ed] commerce . . . by robbery or extortion. These words do not lend themselves to restrictive interpretation; as we have recognized, they manifest . . . a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence. . .
>
> With regard to the concern about disturbing the federal-state balance, moreover, there is no question that Congress intended to define as a federal crime conduct that it knew was punishable under state law. The legislative debates are replete with statements that the conduct punishable under the Hobbs Act was already punishable under state robbery and extortion statutes. Those who opposed the Act argued that it was a grave interference with the rights of the States. Congress apparently believed, however, that the States had not been effectively prosecuting robbery and extortion affecting interstate commerce and that the Federal Government had an obligation to do so.

Culbert, 435 U.S. at 373, 379-80. Moreover, as noted above, the Hobbs Act has consistently been applied by the courts to the conduct of local officials. See supra p.16. Because the extortion engaged in by Hooks was validly within the reach of Congress' regulatory authority under the Commerce Clause, the Court finds no basis for concluding that the application of the Act is in violation of the Tenth Amendment. Accordingly, Defendants motion to dismiss the indictment for violation of the Tenth Amendment as applied is DENIED.

### V. Unconstitutional Jury Instructions

Finally, Hooks argues that the indictment must be dismissed on the ground that the general

charge to the grand jurors impinged on their authority and independence in violation of the Fifth Amendment. Because the Defendant does not know what language was actually used to charge the grand jury, he relies for purposes of his motion on that of the model charge recommended by the Administrative Office of the United States Courts. See Model Grand Jury Charge, Judicial Conference of the United States (March 2005). Alternatively, Hooks moves the Court to order the Government to produce a copy of the general charge to the grand jury upon empanelment for use in support of the instant motion.

The Defendant objects to two specific instructions he assumes to have been included in the grand jury charge. Specifically, he argues that the passages of the model charge informing jurors that they may not determine the "wisdom of the criminal laws enacted by Congress" and that directing jurors to indict upon a finding of probable cause unconstitutionally constrain the authority and independence of the grand jury.[3] In support of his position, Hooks relies on the dissenting opinion authored by Judge Hawkins in United States v. Navarro-Vargas, 408 F.3d 1184, 1212-13 (9th Cir. 2005) (en banc). Similar to Hook's argument in the instant case, the appellants in Navarro-Vargas challenged the constitutionality of charging language relating to consideration of the "wisdom of the

---

[3] In relevant part, the model charge provides as follows:

> "9. You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you."
>
> . . .
>
> "25. Your task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged against him. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which he is charged."

Model Grand Jury Charge ¶¶ 9, 25, Judicial Conference of the United States (March 2005).

laws" and probable cause. Id. at 1202-06. The appellants contended that, in instructing the grand jury to abstain from judging the wisdom of the laws, the charge impermissibly circumscribed the subject matter of the grand jury's inquiry. Id. at 1202. They further objected to  the passage relating to probable cause on the grounds that it failed to explain that the grand jury could refuse to indict even upon a finding of probable cause, thereby impinging on their discretion. Id. at 1204.

However, in contrast to Hook's position in the instant case, a majority of the Ninth Circuit, sitting en banc, rejected both arguments and held that the instructions were not in violation of the Fifth Amendment. First, the court concluded that an instruction to refrain from judging the wisdom of the laws does not impinge on the independence of the grand jury because such an instruction, with nothing more, entailed no loss of independence. "History demonstrates that grand juries do not derive their independence from a judge's instruction.  Instead, they derive their independence from an unreviewable power to decide whether or not to indict." Id. at 1204.  Further, because grand jury decision-making is not public, like that of the courts in ruling on the constitutionality of laws or often the executive branch in determining whether to enforce laws, allowing the grand jury to "here and there decid[e] for itself that a law lacked "wisdom" is an invitation to lawlessness and something less than equal protection of the laws." Id. at 1203.

In considering the language relating to probable cause, the Ninth Circuit noted that because the passage instructs grand jurors that they "should" rather than "shall" or "must" indict upon a finding of probable cause, the instruction does not totally restrict grand jury discretion. Id. at 1204; see also United States v. Marcucci, 299 F.3d 1156, 1164 (9th Cir. 2002) (concluding that the charge "leaves room – albeit limited room – for a grand jury to reject an indictment that, although supported by probable cause, is based on governmental passion, prejudice or injustice. The difference between

22

'should' and 'shall' is not . . . a lawyer's distinction, but a commonplace understanding; 'shall' is used to express what is mandatory, 'should' to express what is probable or expected."). In further support for its position, the appellate court compared the discretion of the grand jury to that of the executive in following its Article II's mandate to "take Care that the Laws be faithfully executed." Id. at 1205 (quoting U.S. CONST. amend. II, § 3.). In comparison to prosecutorial discretion, which may be subject to review by the courts for selectivity or political review by an electorate unsatisfied with the President's enforcement record, "there is, literally, no check on a grand jury's decision not to return an indictment." Id. at 1206. On this basis, the court concluded that "[i]t is the grand jury's position in the constitutional scheme that gives it its independence, not any instruction that a court might offer." Id. Because the remaining instructions offer sufficient explanation to the grand jury regarding its independence and ability to refuse to indict and because the instruction has no practical effect on the grand jury's determination, the court held that the passages were not in violation of the Fifth Amendment. Id.; See also United States v. Smyth, 104 F. Supp. 283, 292-93 n. 36 (N.D. Cal. 1952) ("There has never been an instance where an instruction to a grand jury has been held error by an appellate court. If the indictment is good and the trial fair, that ends the matter, irrespective of what the judge may have said to the grand jury.").

The Court finds the reasoning of the Ninth Circuit to be persuasive. Because neither instruction alters or restricts the independence and discretion of the grand jury, nor is inconsistent with its constitutional role and function, the Court concludes that the purported instructions are not in violation of the Fifth Amendment. As such, Defendant's motion to dismiss on this basis is DENIED.

Alternatively, Hooks seeks an order from the Court requiring the Government to produce the

actual instructions given to the grand jury upon empanelment. "The general rule of secrecy of grand jury proceedings has been held to be essential to the purpose of the grand jury process." United States v. Smith, No. 02-20380, 2004 WL 784521, *1 (W.D. Tenn. Jan. 26, 2004) (citing United States v. Proctor and Gamble Co., 356 U.S. 677, 681, 78 S. Ct. 983, 2 L.Ed.2d 1077 (1958)). However, Federal Rule of Criminal Procedure 6(e) permits a court to authorize disclosure of grand jury matters "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii). Whether or not to grant or deny requests for disclosure of grand jury proceedings is within the discretion of the trial court. United States v. Levinson, 405 F.2d 971, 981 (6th Cir. 1968). The Sixth Circuit requires that the grounds for disclosure be demonstrated with particularity and reflect a narrowly tailored and compelling need. In re Grand Jury 89-4-72, 932 F.2d 481, 489 (6th Cir. 1991). This heavy burden reflects the "strong policy in favor of maintaining the secrecy of grand jury proceedings." United States v. Azad, 809 F.2d 291, 294 (6th Cir. 1986).

The Defendant seeks production of the grand jury instructions to "ensure proper development of the record and a thorough legal analysis of all issues" affecting his Fifth Amendment rights. (Def.'s Mot. at 6-7.) In light of the Court's finding that the presumed grand jury instructions did not violate Hooks' Fifth Amendment rights and the lack of any other basis for the request, the Court concludes that the Defendant has failed to establish a particularized, compelling need for disclosure.[4]

---

[4] The Court notes Defendant's argument, based on United States v. Alter, 482 F.2d 1016 (9th Cir. 1973), that the instructions at issue are not secret and thus should not be subject to the heavy burden applicable to disclosures under Federal Rule of Criminal Procedure 6(e). (Def.'s Mot. at 6 n.2.) In Alter, the Ninth Circuit stated that instructions are "ground rules" by which the grand jury conducts its proceedings rather than part of the proceedings themselves, and thus, are not secret pursuant to the Federal Rules of Criminal Procedure. Alter, 482 F.2d at 1029 n.21. In addition to the fact that Alter is not binding precedent on this Court, it is also noted that, because the instructions had already been

See United States v. Tennyson, 88 F.R.D. 119, 121 (E.D. Tenn. 1980) (finding that a " generalized desire by [the defendant] to see what happened before the grand jury in the hope that something might turn-up therein which would help them defend against the charges. . ." does not satisfy the particularized need requirement.)  As such, the motion for production of the grand jury instructions is DENIED.

CONCLUSION

For the forgoing reasons, the Defendant's motions to dismiss his indictment on grounds of duplicity, lack of jurisdiction, failure to state a claim, and violation of the Fifth Amendment, as well as for the Government to produce the grand jury instructions, are DENIED.

IT IS SO ORDERED this _12_ day of December, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

produced, the Alter court did not in fact address the disclosure as part of the holding of the case.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 27 in case 2:05-CR-20329 was distributed by fax, mail, or direct printing on December 12, 2005 to the parties listed.

---

Marc N. Garber
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd., NE
Ste. 14
Marietta, GA 30068

Steven E. Farese
FARESE FARESE FARESE, PA
122 Church Street
P.O. Box 98
Ashland, MS 38603

Tim DiScenza
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT